IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| Sofia Cano, | ) | Case No. 9:22-cv-04247-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| South Carolina Department of Corrections; Dr. Chris Kunkle; Esther Labrador; Dr. Andrew Hedgepath; Dr. John Taylor; William Langdon; Salley Elliott; Kenneth L. James; Netra Adams; Pamela Derrick; Dr. Jennifer Block; Yvonne Wilkins-Smith; Shawanda Washington; Joel Anderson, *in his official capacity as Interim Director of the South Carolina Department of Corrections*, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on cross motions for summary judgment filed by Plaintiff and Defendants [Docs. 175; 176], a motion for preliminary injunction filed by Plaintiff [Doc. 156], and two motions to exclude filed by Plaintiff [Docs. 172; 173]. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2), D.S.C., this matter was referred to United States Magistrate Judge Molly H. Cherry for pre-trial proceedings.

On June 16, 2025, the Magistrate Judge issued a Report and Recommendation ("Report") recommending that Plaintiff's motions for summary judgment and for preliminary injunction be denied, Defendants' motion for summary judgment be granted in part and denied in part, and the motions to exclude be denied without prejudice and with leave to refile as pre-trial motions at the appropriate time. [Doc. 199.] The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the

Report and the serious consequences if they failed to do so. [*Id.* at 67.] The parties both filed objections and replies. [Docs. 204; 205; 207; 208.]

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a de novo determination of only those portions of the Report that have been specifically objected to, and the Court may accept, reject, or modify the Report, in whole or in part. 28 U.S.C. § 636(b)(1). The Court will review the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" (internal quotation marks omitted)).

## BACKGROUND[1]

Plaintiff, a transgender inmate who has been incarcerated since she was in the eighth grade, was born anatomically male but realized at the age of 16 that she was transgender. [Docs. 176-1 at 15 (14:12–25); 175-39 at 9.] In October 2019, at age 17, Plaintiff was transferred to the South Carolina Department of Corrections ("SCDC"), and by June 2020, Plaintiff began identifying as a woman. [Doc. 175-39 at 9–10.]

---

[1] The Magistrate Judge provided an accurate and thorough recitation of the facts and, therefore, the Court includes only the factual information necessary to address the parties' objections.

Soon thereafter, Plaintiff began seeing a Qualified Mental Health Professional ("QMHP"), Koren Cooper, who provisionally diagnosed Plaintiff with gender dysphoria. [Doc. 176-4 at 262–63.]  According to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (5th ed. Text Revision 2022), individuals with gender dysphoria experience a discrepancy between the gender to which they have been assigned and their experienced/expressed gender, and exhibit evidence of distress about this incongruence, such as depression, self-mutilation, self-castration, and suicidality. [Docs. 175-4 at 11, 13; 175-13 ¶ 23.]  Though two of Defendants' experts disagree, there is some consensus that the Standards of Care published by the World Professional Association for Transgender Health ("WPATH") are the accepted protocols for the treatment of gender dysphoria.  [*See* Doc. 175-3 at 57 (218:9–219:1).]  Depending on individual needs, treatment for gender dysphoria can include social transition, hormone therapy, psychotherapy, and surgical intervention.  [Doc. 175-8 at 19 ¶ 23.]

After a counseling session with another QMHP in November 2020, Plaintiff received an Individual Accommodation Plan ("IAP") that gave her authorization to have female undergarments, nightshirt, and bathrobe; to cut her hair in accordance with female grooming standards; to access items from the approved female canteen list; and to live in a single room.  [*See* Docs. 176-4 at 191–93; 176-5.]  Between December 2020 and June 2021, Plaintiff began filing grievances, appeals, and requests to staff members that SCDC arrange for her to receive feminizing hormone therapy.  [*See, e.g.*, Docs. 175-83; 175-80; 175-86; 175-89; 6-31.]  Plaintiff was informed by Defendants that SCDC was prohibited from allowing her to begin hormone therapy through SCDC pursuant to a South Carolina budget proviso stating:

> The Department of Corrections is prohibited from using state funds or state resources to provide a prisoner in the state prison system sexual reassignment surgery; however, if a person is taking hormonal therapy at the time the person is committed to the Department of Corrections, the department shall continue to provide this therapy to the person as long as medically necessary for the health of the person.

2021 S.C. Acts No. 4100, Part 1B, § 65.28 (the "Budget Proviso"); [*see, e.g.*, Docs. 175-80; 6-31]. Plaintiff refers to SCDC's policy interpreting the Budget Proviso as a "freeze-frame policy." [*See*, *e.g.*, Doc. 64 ¶ 96 (internal quotation marks omitted).] Plaintiff was informed that she could attempt to secure hormone therapy via the Outside Elective Medical Treatment process. [Doc. 176-6.] In addition to providing hormone therapy to inmates already receiving hormone therapy at the time they are committed [*see* Docs. 175-80; 6-31], SCDC can prescribe the medications that can be used to treat gender dysphoria to other inmates to manage non-gender dysphoria medical conditions [*see* Doc. 175-2 at 30 (111:14–18), 37 (138:13–20, 140:7–12, 17–20), 38 (142:10–13)].

Plaintiff has also filed grievances related to certain requested social transition accommodations. In August 2021, Plaintiff informed SCDC that her name had been legally changed to Sofia Erin Cano, and she requested that her name be changed in the tablet system and on her ID card. [Docs. 175-121; 175-117.] On November 17, 2021, Plaintiff filed a grievance complaining that her ID card did not contain the proper name and that officers and staff did not recognize her legal name; as a result, Plaintiff's legal name was eventually added in small print below her birth name on her ID card. [Docs. 175-124; 6-40.] However, SCDC staff are not instructed to use an inmate's preferred pronouns, nor are the pronoun accommodations reflected on an inmate's badge. [*See* Docs. 175-2 at 64 (249:8–23), 65 (251:6–13); 175-95 at 13 (223:23–2248).]

Additionally, sometime before the filing of this lawsuit, the warden at Allendale Correctional Institution ("Allendale"), where Plaintiff is currently housed, banned the purchase of makeup and nail polish for all inmates because of concerns that makeup could be used to dress up a dummy in an attempt to escape and because it "could be used to cover up marks and abrasions and bruises consistent with altercations, fights, and assaults." [Docs. 175-2 at 58 (224:8–225:5); 175-113 at 32–33 (121:6–122:16).] Plaintiff has also sought unfettered access to a traditional razor, instead of the depilatory cream or electric shaver available to her, for effective hair removal. [*See* Docs. 175-77; 175-98 at 4 (125:3–10); 175-99.] For most of the time Plaintiff has been at Allendale, Plaintiff has been housed in general population and has had access to razors for hair removal, but she fears she will be moved to a housing unit where she could no longer access razors. [Doc. 175 at 29.] Finally, Plaintiff was housed without a roommate for over a year in accordance with her IAP, but in late summer 2021, Plaintiff learned it had been modified without her consent to exclude the single-room provision. [Doc. 175-140.] After Plaintiff received a male roommate in September 2022, Plaintiff filed several grievances requesting reassignment due to safety concerns. [Doc. 175-137; *see* Docs. 175-142; 175-143; 175-144; 175-145; 175-146; 175-147.] At the time she filed her motion for summary judgment, Plaintiff was housed with another transgender woman and felt safe, but she fears she will be reassigned to a cell with a male roommate. [Doc. 175 at 39.]

Plaintiff initiated this action on November 25, 2022 [Doc. 1], and filed an Amended Complaint on November 21, 2023, asserting five causes of action: (1) a claim against all individual Defendants pursuant to 42 U.S.C. § 1983 for deliberate indifference in violation

of the Eighth Amendment; (2) a § 1983 claim against all individual Defendants for violation of the Equal Protection Clause of the Fourteenth Amendment; (3) a claim against SCDC for disability discrimination in violation of Title II of the Americans with Disabilities Act (the "ADA"); (4) a claim against SCDC for disability discrimination in violation of Section 504 of the Rehabilitation Act; and (5) a claim against SCDC for disability discrimination in violation of Section 1557 of the Affordable Care Act (the "ACA"). [Doc. 64 ¶¶ 162–209.] Plaintiff seeks injunctive and declaratory relief and an award of attorney's fees and expenses.[2] [*Id*. at 47–48.]

On January 30, 2024, in ruling on Plaintiff's motion for preliminary injunction, the Court ordered SCDC to evaluate Plaintiff's need for hormone therapy. [Doc. 91 at 13–14.] Dr. Rose Pitt, an SCDC psychiatrist, was selected to perform the evaluation. [Doc. 175-58 at 5.] After evaluating Plaintiff in person for eight hours over the course of two days and reviewing Plaintiff's medical records, Dr. Pitt determined that hormone therapy was not medically necessary care for Plaintiff because Plaintiff was not experiencing clinically significant distress. [Doc. 175-15 at 44 (169:12–18), 49 (186:25–188:14).] Following Dr. Pitt's deposition, Plaintiff's expert Dr. Isabel Lowell reexamined Plaintiff and found that her condition had worsened and that she was at risk of self-harm or suicide. [Doc. 175-61.] As far as the Court is aware, Plaintiff continues to receive mental health counseling and has access to numerous additional accommodations through her IAP. [*See* Docs. 176-5; 175-50 at 7–8 ("Since Plaintiff came into SCDC custody in October 2019, Plaintiff has been treated by dozens of mental health providers.").]

---

[2] On October 7, 2024, the parties jointly stipulated to dismissal with prejudice of all claims for compensatory and punitive damages. [Doc. 159.]

## APPLICABLE LAW

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude

7

the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

The Fourth Circuit summarized the Court's obligation when faced with cross motions for summary judgment in *Rossignol v. Voorhaar*:

> When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law . . . . When considering each individual motion, the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion.

316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted). Accordingly, the Court has reviewed each party's motion independently and resolved all factual disputes in favor of the nonmoving party.

**Preliminary Injunction Standard**

The current standard for granting preliminary injunctive relief is set forth in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008).  Under *Winter*, to obtain a preliminary injunction, the moving party must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  555 U.S. at 20; *see also League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014).  The party seeking a preliminary injunction bears the burden of establishing each of the four requirements.  *The Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010), *reinstated in relevant part*, 607 F.3d 355 (4th Cir. 2010) (per curiam).

## DISCUSSION

As noted, the Magistrate Judge recommends denying both motions for summary judgment as to Plaintiff's § 1983 claims against Defendant Anderson and statutory claims against Defendant SCDC, denying Plaintiff's motion for preliminary injunction, and denying with leave to refile Plaintiff's motions to exclude.[3]  [Doc. 199.]  Specifically, the Magistrate Judge found that there are genuine disputes of material fact relating to whether Plaintiff currently has gender dysphoria mandating treatment and, if so, what treatment is

---

[3] The Magistrate Judge explained in the Report that the parties have agreed that dismissal is appropriate as to Plaintiff's § 1983 claims against the individual Defendants in their individual capacities and the official capacity claims against Defendants Kunkle, Labrador, and Hedgepath.  [Doc. 199 at 29–32.]  Neither party has objected to this characterization by the Magistrate Judge or to her recommendation that these Defendants be dismissed, and the Court therefore accepts this recommendation of the Magistrate Judge and incorporates it by reference.  Accordingly, reference to Defendants throughout the remainder of this Order is to Defendants SCDC and Anderson.

necessary, and whether the denial of Plaintiff's requests for hormone therapy and social transition accommodations are the result of the freeze-frame policy or an individualized determination by SCDC. [*Id*. at 32–59.] Because there are significant disputes of material fact that are central to the determination of Plaintiff's claims, the Magistrate Judge concluded that Plaintiff is not likely to succeed on the merits and should not be awarded a preliminary injunction. [*Id*. at 60–65.] Finally, the Magistrate Judge recommends denying Plaintiff's motions to exclude expert testimony with leave to refile as pretrial motions because she did not rely on or consider either expert's opinions in analyzing the motions for summary judgment. [*Id*. at 59–60.]

In their objections, both parties argue that the Magistrate Judge erred in finding that there are factual disputes material to Plaintiff's claims. [Docs. 204; 205.] Additionally, Defendants argue that the Magistrate Judge erred by not considering the expert opinions of Drs. Kristopher Kaliebe and James Cantor [Doc. 204 at 6–10], and Plaintiff argues that the Magistrate Judge conflated the standards governing summary judgment and preliminary injunction and erred in concluding Plaintiff is not likely to succeed on the merits [Doc. 205 at 28–33]. Based on the below analysis, the Court accepts the Report in part and rejects it in part.

**Cross Motions for Summary Judgment**

Plaintiff and Defendants both move for summary judgment on all of Plaintiff's claims. Upon review of the Report, the record, and the parties' briefs, it is clear to the Court that the key questions in the case are (1) whether it is medically necessary for Plaintiff to receive hormone therapy and certain social transition accommodations and (2) whether Defendants are constitutionally and/or statutorily required to provide such

treatment. As discussed in detail in the Report, the Magistrate Judge identified factual disputes on these key issues that she concluded should preclude summary judgment to either party on all claims. Although the Court agrees that there are genuine issues of material fact precluding summary judgment on Plaintiff's Eighth Amendment, Equal Protection, ADA, and Rehabilitation Act claims, for reasons it will discuss, the Court disagrees with the Magistrate Judge's conclusions regarding Plaintiff's ACA claim and concludes that summary judgment should be granted to Defendants on this claim.

### *Plaintiff's Eighth Amendment, ADA, and Rehabilitation Act Claims*

First, the Magistrate Judge recommends denying both summary judgment motions on Plaintiff's claims for deliberate indifference under the Eighth Amendment and for disability discrimination under the ADA and Rehabilitation Act because there are factual disputes regarding whether Plaintiff has a serious medical need or disability and whether Defendants are acting with deliberate indifference or as a result of discrimination in denying Plaintiff the treatment she seeks. [Doc. 199 at 32–38, 50–56.] The Court agrees.

<u>Applicable Law</u>

42 U.S.C. § 1983 provides a private cause of action for constitutional violations by persons acting under color of state law. "Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018). "When a prison official demonstrates deliberate indifference to an inmate's serious medical needs, a constitutional violation occurs under the Eighth Amendment." *Id.* (internal quotation marks omitted); *see Scinto v. Stansberry*, 841 F.3d 219, 236 (4th Cir. 2016). "Courts treat an inmate's mental health claims just as seriously as any physical health claims." *DePaola*, 884 F.3d at 486. To establish a claim under

§ 1983 for deliberate indifference to serious medical needs, "the plaintiff must demonstrate that the defendant prison official acted with 'deliberate indifference' (the subjective component) to the plaintiff's 'serious medical needs' (the objective component)." *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019).

To establish a claim under Title II of the ADA and § 504 of the Rehabilitation Act, a plaintiff must show that (1) he has a disability; (2) he is otherwise qualified to receive the benefits of a public service, program, or activity; and (3) he was denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of his disability. *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 750 (4th Cir. 2018). Under the Rehabilitation Act, a plaintiff must demonstrate that he was "excluded solely by reason of his disability," whereas "the ADA requires only that the disability was a motivating cause of the exclusion." *Id*. (internal quotation marks omitted). "The Fourth Circuit treats claims under the Rehabilitation Act and the ADA as the same," such that they "can be combined for analytical purposes because the analysis is substantially the same." *Koon v. North Carolina*, 50 F.4th 398, 403 n.2 (4th Cir. 2022) (internal quotation marks omitted).

<u>Analysis</u>

The Court has reviewed the entire record, the Report, the parties' arguments, and the applicable law, and agrees with the Magistrate Judge that there are genuine issues of material fact regarding required elements of Plaintiff's claims under the Eighth Amendment, ADA, and Rehabilitation Act.

As the Magistrate Judge notes, there is extensive evidence documenting Plaintiff's diagnosis of gender dysphoria by medical professionals inside and outside of SCDC.

12

[*See, e.g.,* Docs. 176-4 at 189, 261–63; 175-61.]  However, during her most recent evaluation at SCDC, Dr. Pitt concluded that Plaintiff does not meet the criteria for gender dysphoria and there is no evidence of clinically significant distress.  [*See* Doc. 175-15 at 49 (186:25–188:14).]  As a result, there is genuine dispute over whether Plaintiff has a serious medical need under the Eighth Amendment or a disability under the ADA and Rehabilitation Act that necessitates hormone therapy and the social transition accommodations Plaintiff seeks.  *See Thomas v. Carmeuse Lime & Stone, Inc.*, No. 7:12-cv-00413-GEC, 2017 WL 1216614, at *7 (W.D. Va. Mar. 31, 2017) (noting a jury is in the best position to resolve a "battle of the experts," because a jury "could credit either expert, or choose to find both unreliable and instead make factual determinations based upon the conflicting evidence presented"); *Reyazuddin v. Montgomery Cnty.*, 789 F.3d 407, 417 (4th Cir. 2015) ("[A] battle of the experts . . . should not be resolved at summary judgment.").  And even were the Court to determine that Plaintiff is undoubtedly entitled to such treatment, there are genuine disputes of fact regarding Defendants' current reasons for denying it.  On the one hand, a reasonable factfinder could determine that Defendants are denying the treatment Plaintiff requests because Dr. Pitt most recently determined that Plaintiff does not have gender dysphoria that requires treatment; on the other hand, a factfinder could conclude that Defendants are aware of Plaintiff's serious medical needs/disability and are refusing treatment only as a result of the freeze-frame policy, which the jury could determine amounts to deliberate indifference and discrimination.  Thus, the Court agrees that there are material factual issues that must be resolved by a jury and denies summary judgment on Plaintiff's Eighth Amendment, ADA, and Rehabilitation Act claims for this reason.

***Plaintiff's Fourteenth Amendment Claim***

Similar to her conclusion regarding Plaintiff's Eighth Amendment and statutory claims, the Magistrate Judge concluded that there are genuine disputes of material fact precluding summary judgment to Plaintiff on her equal protection claim because a reasonable factfinder could find that SCDC currently is denying Plaintiff hormone therapy and social transition accommodations because she does not have a medical need for such therapy. [Doc. 199 at 42–44.] By the same token, the Magistrate Judge concluded that Defendants are not entitled to summary judgment on Plaintiff's claim that denying her hormone therapy violates her equal protection rights because a reasonable factfinder could conclude based on the evidence that the circumstances leading to Dr. Pitt's conclusion that Plaintiff no longer has gender dysphoria subsequently changed and treatment decisions are still being made based on the freeze-frame policy.[4] [*Id*. at 44–50.]

In their objections, Defendants argue that Plaintiff cannot demonstrate that the denial of hormone therapy and social transition accommodations is the result of

---

[4] Defendants do not argue in their motion that they are entitled to summary judgment on Plaintiff's equal protection claim for the social transition accommodations [*see* Doc. 176 at 28–29], and the Magistrate Judge accordingly did not address Defendants' entitlement to summary judgment on this issue. To the extent Defendants argue for the first time in their objections that they are entitled to summary judgment on that claim [*see* Doc. 204 at 19], their objection is overruled. *See ContraVest Inc. v. Mt. Hawley Ins.*, 273 F. Supp. 3d 607, 620 (D.S.C. 2017) ("The court is not obligated to consider new arguments raised by a party for the first time in objections to the Magistrate's Report." (cleaned up)).

The Magistrate Judge also rejected Defendants' arguments that Plaintiff does not have standing to bring an equal protection claim, that Plaintiff cannot demonstrate she lacks an adequate remedy at law, and that the Prison Litigation Reform Act ("PLRA") bars her requested prospective relief. [Doc. 199 at 44–49.] In their objections, Defendants do not address standing or their adequate remedy at law argument but maintain that the

14

intentional or purposeful discrimination because SCDC has evaluated Plaintiff and determined that hormone therapy and her requested social transition accommodations are not required treatments, and that Plaintiff's condition has remained the same since that evaluation. [Doc. 204 at 15–17, 19.] Moreover, Defendants argue that their actions are justified under the requisite level of scrutiny. [*Id*. at 17–19.]

### Applicable Law

To succeed on an equal protection claim, Plaintiff "must first demonstrate that [s]he has been treated differently from others with whom [s]he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). If she makes this showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id*. When equal protection challenges arise in a prison context, "courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner." *Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002). "[T]he proper standard for determining the validity of a prison regulation claimed to infringe on an inmate's constitutional rights is to ask whether the regulation is 'reasonably related to legitimate penological interests.'" *Washington v. Harper*, 494 U.S. 210, 223 (1990) (quoting *Turner v. Safley*, 482 U.S. 78,

---

PLRA prevents a court from granting prospective injunctive relief when it is not the least intrusive means necessary to correct the constitutional violation. [Doc. 204 at 15.] The Court agrees with the Magistrate Judge that because there are genuine disputes of material fact precluding summary judgment on the issue of whether hormone therapy is necessary to provide adequate treatment, it cannot grant summary judgment on the basis that, as Defendants argue, the requested injunction is not "necessary to correct the violation of a federal right." [Doc. 199 at 48–49 (quoting 18 U.S.C. § 3626(a)(1)(B)(ii)).] Accordingly, the Court overrules Defendants' objection.

89 (1987)).  Courts apply a four-part test to determine whether a prison policy is constitutional:

> (1) whether there is a valid, rational connection between the policy and the penological interest; (2) whether an alternative means of exercising the right remains open to prison inmates; (3) the impact accommodation of the asserted right will have on guards, other inmates, and the allocation of prison resources; and (4) the absence of ready alternatives that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Morrison*, 239 F.3d at 655 (citing *Turner*, 482 U.S. at 89–91).

<u>Analysis</u>

In the Report, the Magistrate Judge concluded that there are genuine disputes of material fact as to the first step of the equal protection analysis, i.e., whether Plaintiff is being treated differently from others with whom she is similarly situated and whether the unequal treatment is the result of intentional or purposeful discrimination.  [Doc. 199 at 49–50.]  The Court agrees that genuine disputes of material fact preclude summary judgment in favor of Defendant as to the denial of hormone therapy, as Plaintiff has produced evidence that the same therapies that can be used to treat gender dysphoria are given by SCDC to prisoners to manage non-gender dysphoria medical conditions. [*See* Doc. 175-2 at 30 (111:14–18), 37 (138:13–20, 140:7–12, 17–20), 38 (142:10–13).] The Court also agrees that genuine disputes of material fact preclude summary judgment for Plaintiff because, as discussed above, Defendants have pointed to evidence that any unequal treatment is not the result of discrimination but is instead based on an individualized determination that Plaintiff does not have gender dysphoria.  [*See* Doc. 175-15 at 49 (186:25–188:14).]

16

The Magistrate Judge ended the inquiry there, finding that "Defendants do not argue that Plaintiff cannot establish the second step—that is, that the disparity in treatment cannot be justified under the requisite level of scrutiny." [Doc. 199 at 49 n.2 (cleaned up).] The Court agrees. Even though Defendants provided some argument in their objections as to whether the denial of hormone therapy and social transition accommodations is reasonably related to a legitimate penological interest [*see* Doc. 204 17–19], they did not raise this argument in their motion for summary judgment beyond a footnote citing the standard in *Morrison* [*see* Doc. 176 at 29 n.7]. Indeed, after arguing that Plaintiff cannot establish that Defendants acted with the requisite intentional or purposeful discrimination, Defendants explicitly asserted that "[n]o further analysis is needed on this claim." [*Id*. at 29.] Accordingly, the Court denies summary judgment to both parties on the basis that there are questions of fact regarding whether Plaintiff is being treated differently from others with whom she is similarly situated and whether the unequal treatment is the result of intentional or purposeful discrimination. *See ContraVest*, 273 F. Supp. 3d at 620 ("The court is not obligated to consider new arguments raised by a party for the first time in objections to the Magistrate's Report." (cleaned up)).

### Plaintiff's ACA Claim

Section 1557 of the ACA provides that an individual shall not "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116(a). In line with her conclusions regarding Plaintiff's other statutory claims, after concluding that "a reasonable factfinder could conclude that SCDC operates a health

program or activity that receives, at least in part, federal financial assistance," the Magistrate Judge concluded that there are genuine disputes of material fact as to whether Defendants are denying Plaintiff hormone therapy and social transition accommodations as a result of discrimination.  [Doc. 199 at 56–59.]

However, although the Court agrees with the Magistrate Judge's conclusions on the merits of the claim, it disagrees that SCDC is a covered entity under Section 1557. The ACA was enacted to make affordable health insurance available to more people, expand the Medicaid program, and support innovative medical care delivery methods designed to lower the costs of health care generally.  *See* U.S. Department of Health and Human Services, *About the Affordable Care Act*, https://www.hhs.gov/healthcare/about-the-aca/index.html (last visited Sept. 2, 2025); *Nat'l Fed. of Indep. Bus. v. Sebelius*, 567 U.S. 519, 538 (2012) ("The [ACA] aims to increase the number of Americans covered by health insurance and decrease the cost of health care.").  In 2016, the Department of Health and Human Services ("HHS") promulgated a rule interpreting Section 1557.  *See* Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31,376 (May 18, 2016) (the "2016 Rule").  The 2016 Rule defines "covered entity" to encompass any "entity that operates a health program or activity, any part of which receives Federal financial assistance."  *Id*. at 31,466.  A "health program or activity" is defined as "the provision of health-related services, health-related insurance coverage, or other health-related coverage."  *Id*. at 31,467.  For entities "principally engaged" in those endeavors, the regulation extended to "all of [their] operations."  *Id*.  The Rule lists numerous examples of "covered entities" and "health programs or activities," including hospitals, skilled nursing facilities, home health agencies, physical therapy programs, health-related

18

schools, state public health agencies, physicians, and qualified health plan issuers receiving federal financial assistance.  *See id*. at 31,445.  In 2022, the Supreme Court distinguished the ACA from other anti-discrimination statutes by noting that the ACA "outlaws discrimination on any of the [same grounds as the other statutes], in addition to age, by *healthcare entities* receiving federal funds."  *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 217–18 (2022) (emphasis added).

Both parties acknowledge, and the Court confirms, that no court has addressed whether the ACA applies to state penitentiaries.  [*See* Docs. 204 at 22; 207 at 17–18.] The parties also seem to agree that SCDC is not an entity "principally engaged in providing healthcare."  [Docs. 204 at 22; 207 at 18.]  The question, then, appears to be whether SCDC's healthcare operations receive federal financial assistance.  *See Legacy Recovery Servs. LLC v. City of Monroe*, No. 3:23-00697, 2024 WL 1169422, at *15 (W.D. La. Mar. 1, 2024) (explaining that "for an entity not principally engaged in the business of providing healthcare, the ACA's non-discrimination requirements apply to the entity's operations only to the extent any such operation received Federal assistance provided by HHS" (cleaned up)); *Henson v. Walker Cnty.*, No. 7:20-cv-00071-LSC, 2022 WL 681409, at *3 (N.D. Ala. Mar. 7, 2022) ("If an entity is not principally engaged in the business of providing healthcare, it is only covered if its health programs or activities themselves receive Federal financial assistance.").

Defendants argue in their motion for summary judgment that SCDC does not receive federal healthcare funding because it does not receive any reimbursement from Medicaid and the federal funding it does receive is insufficiently related to SCDC's healthcare related activities.  [Doc. 176 at 34–35.]  Plaintiff, on the other hand, claims that

SCDC has received more than $2 million in federal medical grants and has spent nearly $2 million in federal funds on medical and laboratory supplies, less than half of which is accounted for by COVID-related grants.  [Doc. 182 at 33; *see also* Docs. 175-31; 175-32.]

In considering the purpose of the ACA; the plain language of Section 1557; the 2016 Rule, including the listed examples of covered entities and health programs or activities; and the evidence before the Court regarding SCDC's receipt and use of federal funds, the Court concludes that SCDC is not a covered entity under Section 1557 of the ACA.  It appears to the Court that the ACA is intended to apply primarily to healthcare entities such as hospitals and health insurance providers, *see* 81 Fed. Reg. 31,376, and no court has found that a state penitentiary is a covered entity under Section 1557.

Moreover, after reviewing the charts provided by Plaintiff [*see* Docs. 175-31; 175-32], the Court is unconvinced that Plaintiff has forecasted evidence sufficient to establish that SCDC's receipt and use of federal funds is related to the type of health-related services contemplated by the ACA.  For example, almost all the grants described in the first chart [Doc. 175-31] were awarded through the South Carolina Department of Safety for sexual assault, domestic violence, and substance abuse counseling, and the only grant awarded through the South Carolina Department of Public Health was for "training regarding the *discharge* of inmates who are HIV positive."  [*Id.* (emphasis added).]  The second chart [Doc. 175-32] provides that SCDC received federal funding for laundry expenses and a small portion of the "MED SCIENT & LAB SUPPLIES" expenses, but Plaintiff has provided no evidence explaining how the lab supplies relate to SCDC's healthcare services.  Notably, this same chart detailing SCDC's expenses notes that the

nearly $10 million spent on "MED SCIENT & LAB PRESCRIPTION DRUGS" received no federal financial assistance.  [*See id*. at 2.]  As a result, based on the evidence before it, the Court is left to conclude that any federal financial assistance received by SCDC for healthcare-related expenses is so small or attenuated that it cannot impute covered entity status on SCDC under the ACA.  *See Hammons v. Univ. of Md. Med. Sys. Corp.*, 649 F. Supp. 3d 104, 118 (D. Md. 2023) ("Recognizing the uncertainty regarding the regulations, courts have looked to the definitions in Section 504, Title VI, Title IX, and the Age Discrimination Act for additional guidance."); *cf. Stewart v. N.Y. Univ.*, 430 F. Supp. 1305, 1314 (S.D.N.Y. 1976) ("In sum, [the] plaintiff must show that the Federal financial assistance received by the [defendant] constitutes more than a de minimus portion of its annual revenues and that there is some material connection between said assistance and the [policy] challenged" under Title VI); *Othen v. Ann Arbor Sch. Bd.*, 507 F. Supp. 1376, 1390 (E.D. Mich. 1981) (holding that a "de minimis percentage of the [defendant's] total operating budget cannot form the basis for invocation of Title IX"); *Marshall v. Sisters of Holy Fam. of Nazareth*, 399 F. Supp. 2d 597, 603 (E.D. Pa. 2005) (holding that the minimal federal assistance received by a school was "too little to alter [the court's] conclusion that the [defendant] does not receive federal financial assistance for purposes of the Rehabilitation Act"); *J.M. v. Nobel Learning Cmtys., Inc.*, No. 12-3882, 2013 WL 4833846, at *3 (E.D. Pa. Sept. 10, 2013) ("[W]hen similar federal assistance is sufficiently small or attenuated, Section 504 liability does not attach.").  Accordingly, the Court grants summary judgment to Defendants on Plaintiff's claim for disability discrimination under the ACA.

**Plaintiff's Motion for Preliminary Injunction**

The Magistrate Judge also recommends denying Plaintiff's motion for preliminary injunction because she cannot demonstrate that she is likely to succeed on the merits of her claims considering the significant factual disputes identified in the Report. [Doc. 199 at 63–65.] In her objections, Plaintiff argues that the Magistrate Judge conflated the standards governing summary judgment and preliminary injunction and was required to make credibility determinations and findings of fact when necessary. [Doc. 205 at 29–30.] Plaintiff further argues that "the substantial weight of Plaintiff's evidence" establishes she is likely to succeed on the merits, and that the Court should give effect to its prior ruling granting Plaintiff's motion for preliminary injunction. [*Id.* at 30–31.]

To establish the first *Winter* factor, a plaintiff must "clearly demonstrate that [she] will *likely succeed* on the merits," rather than present a mere "grave or serious question for litigation." *Am. Fed'n of State, Cnty. and Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, No. 25-1411, 2025 WL 1249608 (4th Cir. Apr. 30, 2025) (internal quotation marks omitted). "Importantly, a number of courts have declined to issue a preliminary injunction when there are significant factual disputes." *Wellin v. Wellin*, No. 2:13-CV-1831-DCN, 2013 WL 6175829, at *4 (D.S.C. Nov. 22, 2013) (citing cases); *see also Price v. City of Fayetteville*, N.C., No. 5:13-CV-150-FL, 2013 WL 1751391, at *4 (E.D.N.C. Apr. 23, 2013) (explaining that courts in the Fourth Circuit have recognized that, "when the facts are sharply disputed, a preliminary injunction will not be granted because a preliminary injunction requires a clear showing" (cleaned up)). Because there are significant factual disputes as to Plaintiff's remaining claims, discussed in detail in the Report and in this Order, the Court agrees with the Magistrate Judge that Plaintiff has not made a clear

showing that she will likely succeed on the merits of her remaining claims.  Accordingly, the Court overrules Plaintiff's objections and denies her motion for preliminary injunction. *See Frazier v. Prince George's Cnty., Md.*, 86 F.4th 537, 544 (4th Cir. 2023) ("[D]enying a preliminary injunction only takes the rejection of a single factor.  So a district court denying a preliminary injunction may satisfy Rule 52(a)(2) by stating the facts and legal conclusions about a single factor." (emphasis omitted)).

**Plaintiff's Motions to Exclude**

Finally, Plaintiff seeks to exclude the testimony of two of Defendants' experts, Dr. Kristopher Kaliebe and Dr. James Cantor, arguing that the Court may not consider inadmissible testimony on a motion for summary judgment.  [Docs. 172; 173.]  The Magistrate Judge recommends denying these motions with leave to refile as pretrial motions because she did not consider either expert's testimony, opinions, or reports in deciding the motions for summary judgment.  [Doc. 199 at 60.]  In their objections, Defendants argue that the Magistrate Judge erred by not considering the expert opinions of Drs. Kaliebe and Cantor, specifically their opinions as to the legitimacy of the WPATH Standards of Care and whether hormone therapy is medically necessary for Plaintiff. [Doc. 204 at 6–10.]  However, the Court has reviewed the expert opinions and concludes that they would not change the Court's conclusion that there are material issues of fact regarding whether it is medically necessary for Plaintiff to receive hormone therapy.  Thus, the Court overrules Defendants' objections and concludes that the Magistrate Judge did not err by not considering these opinions on summary judgment.

## **CONCLUSION**

Based upon the foregoing, the Court accepts in part and rejects in part the Report and Recommendation of the Magistrate Judge [Doc. 199] and incorporates it by reference to the extent not inconsistent herewith. Plaintiff's motions for summary judgment [Doc. 175] and for preliminary injunction [Doc. 156] are DENIED; Plaintiff's motions to exclude [Docs. 172; 173] are DENIED with leave to refile as pretrial motions at the appropriate time; and Defendants' motion for summary judgment [Doc. 176] is GRANTED IN PART and DENIED IN PART. Defendants' motion is granted in that all claims against Defendants Kunkle, Labrador, Hedgepath, Taylor, Langdon, Elliott, James, Adams, Derrick, Block, Wilkins-Smith, and Washington, as well as Plaintiff's claim for disability discrimination in violation of Section 1557 of the Affordable Care Act, are dismissed with prejudice. Defendants' motion is denied as to Plaintiff's remaining claims against Defendants Joel Anderson and SCDC.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

September 9, 2025
Charleston, South Carolina

24